# UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**Lexington Division**

| | | |
|---|---|---|
| Donna Slack | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Equifax Information Services, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Trans Union, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     The Prentice Hall Corp. System | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| GLA Collection Co., Inc. | ) | |
| Serve: | ) | |
|     Michael L. Lynch | ) | |
|     2630 Gleeson Lane | ) | |
|     Louisville, KY 40299 | ) | |
| | ) | |
| One Main Financial Services, Inc. | ) | |
| Serve: | ) | |
|     CT Corporation System | ) | |
|     306 W. Main Street, Suite 512 | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Resurgent Capital Services, LP | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     421 West Main Street | ) | |
|     Frankfort, KY 40601 | ) | |

# COMPLAINT and DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This is a complaint for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.C.S. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Boyle County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Donna Slack is a natural person who resides in Jefferson County, Ky. Ms. Slack is a "consumer" within the meaning of the FDCPA and the FCRA.

4. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax has registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

6. Defendant GLA Collection Co., Inc. ("GLA") is a Kentucky corporation. GLA is a third-party debt collector, whose principal office is located at 2630 Gleeson Ln., Louisville, KY 40299.

7. GLA's principal purpose is the collection of debts. GLA regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). GLA is also a "furnisher" of information within the meaning of the FCRA.

8. One Main Financial Services, Inc. ("One Main") is a foreign corporation that has registered to do business in the Commonwealth of Kentucky. One Main's principal office is located at 601 N.W. Second St. Evansville, IN 47708. One Main is a "furnisher" of information within the meaning of the FCRA.

9. Resurgent Capital Services, LP ("Resurgent") is for a foreign limited partnership that has registered to do business in the Commonwealth of Kentucky. Resurgent is a third-party debt collector, whose principal office is located at 55 Beattie Place, Suite 110, MS 425, Greenville,

SC 29601.

10. Resurgent's principal purpose is the collection of debts. Resurgent regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). Resurgent is also a "furnisher" of information within the meaning of the FCRA.

## STATEMENT OF FACTS

11. Ms. Slack filed for Chapter 7 Bankruptcy relief on May 4, 2016 in the Eastern District of Kentucky (the "Chapter 7 Bankruptcy").

12. The Bankruptcy Court entered a discharge in her case on August 17, 2016 (the "Chapter 7 Discharge").

13. Since receiving the Chapter 7 Discharge, Ms. Slack has worked hard to clean up her credit report in order to raise her credit score.

14. Ms. Slack is keenly aware of the importance of her credit score.

15. As explained on Bankrate.com, a person's credit score is important to many major life events, including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

16. In an effort to improve her credit score and rating, Ms. Slack regularly reviews her credit reports.

17. Ms. Slack discovered several incorrect items on her credit reports including tradelines furnished by One Main Financial Services, Inc. ("One Main"), CitiFinancial, Ditech Financial, LLC ("Ditech"), and Resurgent Capital Services, LP ("Resurgent").

## I.  Facts as to One Main Financial Services, Inc.

18. Ms. Slack discovered that One Main Financial Services, LLC ("One Main") was reporting two tradelines on her Trans Union, LLC ("Trans Union") credit report: one with an account number beginning with 2155 (the "2155 Account") and one with an account number beginning with 6070.

19. One Main was reporting on Ms. Slack's Equifax and Trans Union credit reports that the date of first delinquency on the 2155 Account was in August 2016, or about three months *after* Ms. Slack filed for Chapter 7 Bankruptcy relief.

20. The 2155 Account was subject to a seven-year reporting period under 15 U.S.C. § 1681c(a).

21. Under the FCRA, the date of first delinquency determines the beginning of the running of the obsolescence period under 15 U.S.C. § 1681c.

22. The date of first delinquency enables a consumer reporting agency to calculate the seven-year window for "aging-off" purposes.

23. The August 2016 date of first delinquency on the 2155 Account was inaccurate.

24. Reporting a date of first delinquency later than the actual date of first delinquency is called "re-aging."

25. Re-aging a tradeline makes a debt more recent for credit-scoring purposes. This

---

[1.] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

means that a re-aged tradeline has a more negative credit-scoring than the correct reporting of a tradeline with a later date of first delinquency.

26. Consequently, the re-aged 2155 Account harmed Ms. Slack by lowering her credit score and reducing her ability to obtain credit and making credit more expensive for her.

27. Further, based on One Main's re-aged date of first delinquency means that the 2155 Account will remain on Ms. Slack's Trans Union credit report more than a year longer than it should.

28. Ms. Slack sent dispute letters to Trans Union disputing the 2155 Account in which she disputed the dates for the 2155 Account being reported on her Trans Union credit report.

29. Trans Union had a duty under 15 U.S.C. § 1681i(a)(2) to forward notice of Ms. Slack's dispute to One Main.

30. Trans Union complied with its statutory duty and forwarded Ms. Slack's disputes to One Main, which thereby triggered One Main's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative information it was furnishing concerning Ms. Slack.

31. One Main failed to conduct a reasonable investigation into Ms. Slack's disputes concerning the negative credit information One Main was furnishing to Trans Union concerning the 2155 Account.

32. One Main falsely verified the accuracy of the disputed negative credit information to Trans Union.

33. After processing her dispute, One Main continued to furnish negative credit information concerning the 2155 Account.

34. In particular, One Main continue to furnish false and inaccurate credit information the 2155 Account by continuing to report August 2016 as the date of first delinquency.

35. One Main's false and inaccurate re-aging of the 2155 Account lowered Ms. Slack's credit score causing her to be denied credit and financing and/or the opportunity to be offered credit and to obtain credit on more favorable terms.

II. **Facts as to GLA Collection Co., Inc.**

36. On or about February 6, 2017, GLA Collection Co. Inc. ("GLA") was assigned a pre-petition medical debt for collection (the "GLA Medical Debt").

37. The GLA Medical Debt was incurred for personal, family, and/or household purposes, which makes the GLA Medical Debt a "debt" within the meaning of the FDCPA.

38.     It appears that GLA began furnishing negative credit information concerning Ms. Slack and the GLA Medical Debt to one or more consumer reporting agencies on or about May 17, 2017.

39.     While the credit information furnished by GLA did reflect that the debt had been discharged in the Chapter 7 Bankruptcy, the credit information furnished by GLA included an incorrect date of first delinquency. In particular, GLA was reporting the date of first delinquency as April 2016, which is incorrect. Upon information and belief, the date of first delinquency of the GLA Medical Debt is months or years earlier than April 2016.

40.     Upon information and belief, GLA reported credit information about the GLA Medical Debt in an attempt to collect the GLA Medical Debt from Ms. Slack and/or other debts owed by Ms. Slack <u>and</u> assigned to GLA for collection.

41.     Furnishing the wrong date of first delinquency constitutes the reporting of false credit information about the GLA Medical Debt and a false representation as to the legal status of the debt.

42.     GLA's false and inaccurate re-aging of the GLA Medical Debt lowered Ms. Slack's credit score causing her to be denied credit and financing and/or the opportunity to be offered credit and to obtain credit on more favorable terms.

### III.    Facts as to Resurgent Capital Services, LP

43.     Ms. Slack discovered a tradeline furnished by Resurgent Capital Services, LP ("Resurgent") on her credit reports from Trans Union, Equifax, and Experian Information Solutions, Inc. ("Experian").

44.     Resurgent was falsely reporting on all three credit reports that the tradeline was a mortgage account.

45.     The Resurgent tradeline was not a mortgage account. Nor was the tradeline in any way connected to the sale or purchase of any type of real property.

46.     The Resurgent was an auto-title loan that was incurred for personal, family, or household purposes, which makes the Resurgent tradeline a "debt" within the meaning of the FDCPA.

47.     Experian correctly reported that the Resurgent tradeline was discharged in Ms. Slack's Chapter 7 Bankruptcy.

48.     Trans Union failed to correctly report that the Resurgent tradeline was discharged in Ms. Slack's Chapter 7 Bankruptcy.

49.     Equifax failed to correctly report that the Resurgent tradeline was discharged in Ms.

Slack's Chapter 7 Bankruptcy.

50. The false and incorrect information furnished by Resurgent lowered Ms. Slack's credit score causing her to be denied credit and financing and/or the opportunity to be offered credit and to obtain credit on more favorable terms.

### IV. Facts as to Trans Union, LLC

51. After she received her Chapter 7 Discharge, Trans Union, LLC ("Trans Union") continued to report and publish credit report reports concerning Ms. Slack that included tradelines that failed to note that the tradelines had been discharged in Ms. Slack's bankruptcy.

52. In particular, Ms. Slack reviewed an April 25, 2017 Trans Union credit report that included a tradeline from Ditech Financial, LLC ("Ditech") that provided:

```
DITECH FINANCIAL LLC #8205**** (POB 6172, RAPID CITY, SD 57709, (800) 643-0202)
Date Opened:      05/19/2006              Balance:            $1,909         Pay Status:  >Charged Off<
Responsibility:   Individual Account      Date Updated:       02/27/2014     Terms:       $88 per month, paid Monthly for 97
Account Type:     Installment Account     Last Payment Made:  04/10/2013                  months
Loan Type:        SECURED                 High Balance:       $6,571         Date Closed: 02/27/2014
                                                                             >Maximum Delinquency of 120 days in 01/2013<

Remarks: TRANSFERRED TO ANOTHER LENDER; >UNPAID BALANCE CHARGED OFF<
Estimated month and year that this item will be removed: 05/2020
```

| | 01/2014 | 12/2013 | 11/2013 | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | X | X | X | X | X | X | C/O |

| | 01/2013 | 12/2012 | 11/2012 | 10/2012 |
|---|---|---|---|---|
| Rating | 120 | X | X | X |

53. The above credit information is false and inaccurate.

54. The Ditech tradeline should have noted that the debt at issue had been discharged in Ms. Slack's bankruptcy with a $0.00 balance.

55. The maximum delinquency of 120 days past due was also inaccurate and misleading in light of the bankruptcy discharge.

56. Ms. Slack reviewed an April 25, 2017 Trans Union credit report also included a tradeline from CitiFinancial that provided:

```
Adverse Accounts

CITIFINANCIAL #607050712610**** (605 MUNN RD, C/S CARE DEPT, FORT MILL, SC 29715, (800) 922-6235)
Date Opened:      05/19/2006              Balance:            $0             Pay Status:  >Account 120 Days Past Due Date<
Responsibility:   Individual Account      Date Updated:       11/01/2013     Terms:       $88 per month, paid Monthly for 97
Account Type:     Installment Account     Last Payment Made:  11/01/2013                  months
Loan Type:        UNSECURED               High Balance:       $6,571         Date Closed: 11/01/2013
                                                                             >Maximum Delinquency of 120 days in 10/2013
                                                                             and in 11/2013<

Account Sale Info: ACCOUNT SOLD TO GREENTREE
Remarks: DISP INVG COMP-CONSUM DISAGRS; TRANSFERRED TO ANOTHER LENDER; TRANSFERRED TO ANOTHER OFFICE
Estimated month and year that this item will be removed: 06/2020
```

| | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 90 | 60 | 30 | OK | OK | OK | OK | OK | OK | OK | OK |

To dispute online go to: http://transunion.com/disputeonline

57.     The CitiFinancial tradeline should have noted that the debt at issue had been discharged in Ms. Slack's Chapter 7 Bankruptcy.

58.     The maximum delinquency of 120 days past due was also inaccurate and misleading in light of the Chapter 7 Discharge.

59.     The above false and inaccurate credit information furnished by Trans Union lowered Ms. Slack's credit score causing her to be denied credit and financing and/or the opportunity to be offered credit and to obtain credit on more favorable terms.

## IV.    Facts as to Equifax Information Services, LLC

60.     After she received her Chapter 7 Discharge, Equifax Information Services, LLC ("Equifax") continued to report and publish credit report reports concerning Ms. Slack that included tradelines that failed to note that the tradelines had been discharged in Ms. Slack's Chapter 7 Bankruptcy.

61.     In particular, Ms. Slack reviewed an April 25, 2017 Equifax credit report that included a tradeline from Resurgent that provided:

### 3.1 RESURGENT CAPITAL SERVICES (CLOSED)

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxx 9440 | Reported Balance | $0 |
| Account Status | OVER_120_DAYS_PAST_DUE | Debt-to-Credit Ratio | 0% |
| Available Credit | | | |

The tables below show up to 2 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

**Payment History**

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 | | | | | 180 | 180 | | | | | | |

62.     The above credit information is false and inaccurate.

63.     The Resurgent tradeline should have noted that the debt at issue had been discharged in Ms. Slack's Chapter 7 Bankruptcy with a $0.00 balance.

64.     The Account Status of 120 days past due was also inaccurate and misleading in light of the Chapter 7 Discharge.

65. Ms. Slack reviewed an April 25, 2017 Equifax credit report also included a tradeline from CitiFinancial that provided:



66. The CitiFinancial tradeline should have noted that the debt at issue had been discharged in Ms. Slack's Chapter 7 Bankruptcy.

67. The maximum delinquency of 120 days past due was also inaccurate and

misleading in light of the Chapter 7 Discharge.

68. Finally, Ms. Slack reviewed an April 25, 2017 Equifax credit report also included a tradeline from Access Group that provided:

**4.6 ACCESS GROUP (CLOSED)**

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxxx 40 | Reported Balance | $0 |
| Account Status | COLLECTION | Debt-to-Credit Ratio | 0% |
| Available Credit | | | |

69. The Access Group tradeline should have noted that the debt at issue had been discharged in Ms. Slack's Chapter 7 Bankruptcy.

70. The account status of a collection account was also inaccurate and misleading in light of the Chapter 7 Discharge.

71. The above false and inaccurate credit information furnished by Equifax lowered Ms. Slack's credit score, causing her to be denied credit and financing and/or the opportunity to be offered credit and to obtain credit on more favorable terms.

**CLAIMS FOR RELIEF**

**I.    Claims against Equifax Information Services, LLC**

72. Plaintiff Donna Slack restates each of the allegations in the preceding paragraphs as if fully set forth herein.

73. Equifax Information Services, LLC ("Equifax") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Slack and the discharged Resurgent, CitiFinancial, and Access Group tradelines.

74. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Equifax was on clear notice that the failure to update tradelines with respect to bankruptcy information was problematic for Equifax. *See White v. Experian Information Solutions, Inc., et al.*, Approval Order regarding Settlement Agreement and Release, 8:05-cv-01070 (C.D.Calif. entered Aug. 19, 2008) (establishing reasonable procedures for reporting of

tradelines discharged in bankruptcy to assure maximum possible accuracy of consumer credit reports).

75. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## II.    Claims against Trans Union, LLC

76. Plaintiff Donna Slack restates each of the allegations in the preceding paragraphs as if fully set forth herein.

77. Trans Union, LLC ("Trans Union") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Slack and the discharged Resurgent and CitiFinancial tradelines.

78. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Trans Union was on clear notice that the failure to update tradelines with respect to bankruptcy information was problematic for Trans Union. *See White v. Experian Information Solutions, Inc., et al.*, Approval Order regarding Settlement Agreement and Release, 8:05-cv-01070 (C.D.Calif. entered Aug. 19, 2008) (establishing reasonable procedures for reporting of tradelines discharged in bankruptcy to assure maximum possible accuracy of consumer credit reports).

79. In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## III.   Claims against One Main Financial Services, Inc.

80. After being informed by Trans Union that Ms. Slack disputed the accuracy of the information One Main Financial Services, Inc. ("One Main") was furnishing to Trans Union concerning the One Main tradeline, One Main willfully failed to conduct a proper investigation of Ms. Slack's disputes filed with Trans Union.

81. One Main willfully failed to review and all relevant information purportedly provided by Trans Union to One Main in conducting its investigation of Ms. Slack' disputes as required by 15 U.S.C. § 1681s-2(b)(B).

82. One Main willfully failed to direct Trans Union to modify or delete inaccurate information about Ms. Slack pertaining to the One Main tradeline as required by 15 U.S.C. § 1681s-2(b)(C).

83. Ms. Slack has a private right of action to assert claims against One Main arising under 15 U.S.C. § 1681s-2(b).

84. One Main is liable to Ms. Slack for the actual damages she has suffered because of One Main's violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n.

IN THE ALTERNATIVE,

85. One Main's actions were negligent and One Main is liable to Ms. Slack for the actual damages she has suffered because of One Main's violations of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

### IV.  Claims against GLA Collection Co., Inc.

86. GLA Collection Co., Inc. ("GLA") violated the FDCPA by furnishing false and inaccurate credit information about Ms. Slack, including but not limited to re-aging the GLA Medical Debt and reporting credit information about Ms. Slack and the GLA Medical Debt for the improper purpose of coercing her to pay other medical debts placed with GLA for collection.

87. GLA's violations of the FDCPA include violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and one or more subsections of each section.

### V.  Claims against Resurgent Capital Services, LP

88. Resurgent Capital Services, LP ("Resurgent") violated the FDCPA by furnishing false and inaccurate credit information about Ms. Slack, including but not limited to re-aging the Resurgent tradeline.

89. Resurgent's violations of the FDCPA include violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and one or more subsections of each section.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Donna Slack requests that the Court grant her the following relief:

1. Award Plaintiff the maximum amount of statutory damages against Equifax, Trans Union, and One Main under the FCRA;

      2.      Award Plaintiff the maximum amount of statutory damages against GLA and Resurgent under the FDCPA;

      3.      Award Plaintiff actual damages against each Defendant under the FCRA or FDCPA;

      4.      Award Plaintiff punitive damages against Equifax, Trans Union, and One Main for their willful violations of the FCRA;

      5.      Award Plaintiff attorney's fees, litigation expenses and costs;

      6.      A trial by jury; and

      7.      Any other relief to which Plaintiff may be entitled.

      Respectfully submitted,

/s/ James R. McKenzie
**James R. McKenzie**
**J. Hays Lawson**
*Credit Defense Attorneys, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:   (502) 257-7309
james@creditdefenseky.com
hays@creditdefenseky.com